UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| KENNETH JOHNSON and ) | | |
| DICKENS PIERRE, ) | | |
|     Plaintiffs, ) | | |
| ) | | |
| v. ) | CAUSE NO.: 4:18-CV-88-JVB-JEM | |
| ) | | |
| OSCAR WINSKI COMPANY, INC., ) | | |
|     Defendant. ) | | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Compel Discovery [DE 27], filed May 4, 2020. On June 1, 2020, Plaintiffs filed a response, and on June 8, 2020, Defendant filed a reply. Defendant requests that the Court compel production of documents responsive to its Request for Production Number 1.

**I.      Analysis**

Pursuant to Federal Rule of Civil Procedure 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). The party objecting to the discovery request bears the burden

1

of showing why the request is improper. *See McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad discretion when determining matters related to discovery. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993).

    A.    <u>Background</u>

Plaintiffs' Complaint includes claims of race discrimination and retaliation against Defendant, their former employer. Defendant seeks to compel information that Plaintiffs are withholding on the basis of privilege. Plaintiffs assert that the communications in question are protected by both the attorney-client privilege and the marital communication privilege, and that no privilege log is necessary because the communications are not discoverable. Defendant argues that the Plaintiffs' interests do not share sufficient commonality to protect communications between the two Plaintiffs and their attorney, that access by Plaintiff Johnson's wife to communications between Johnson and his attorney mean that those communications are not protected by the attorney-client privilege, and that Plaintiffs have waived any assertion of privilege by failing to provide a privilege log detailing all of the documents they are refusing to provide.

Plaintiffs, as "[t]he party seeking to invoke the privilege[,] bear[] the burden of proving all of its essential elements. Further, because the privilege is in derogation of the search for the truth, it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Plaintiffs argue that at least two privileges protect the communications that Defendant is seeking: the attorney-client privilege and the marital communications privilege. Defendant argues that communications involving both of the plaintiffs and their attorney are not protected by the attorney-client privilege since they necessarily involved a third party, the co-plaintiff. Defendant also argues that Plaintiff

2

Johnson's wife participated in some of the communications, so none of the information shared with her is protected by the attorney-client privilege.

"The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice. . . . [O]rdinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney." *Jenkins v. Bartlett*, 487 F.3d 482, 490-91 (7th Cir. 2007). Plaintiffs do not dispute that the requested communications took place among three or more people, but argue that the privilege encompasses all of them.

B.     Joint Lawyer Doctrine

Plaintiffs argue that communications between the two plaintiffs and their attorney are protected under the joint lawyer doctrine. "Under the joint lawyer doctrine, when two or more persons each having an interest in some problem, or situation, jointly consult an attorney, they necessarily agree to share all information related to the matter of common interest with each other. *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 238 (N.D. Ill. 2014) (citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007)) . For parties who share a lawyer in a case, "otherwise privileged communications with the attorney – i.e. those that qualify as privileged under the attorney/client privilege – though known to each other, will be privileged as to outsiders, but not inter se." *McCullough*, 304 F.R.D. at 238 (citing *F.D.I.C. v. Ogden Corp.,* 202 F.3d 454, 461 (1st Cir.2000); 8 John Henry Wigmore, Wigmore on Evidence § 2312 at 603-09 (McNaughton rev.1961); Restatement (Third) of the Law Governing Lawyers §75 (2000)).

3

Defendant relies on *McCullough* to argue that the parties' interests are insufficiently "in common" to support a shared privilege, but appears to be ignoring the distinction between the concepts of common interest and the joint lawyer doctrine. As the *McCullough* court noted, "[i]t is important to note that the joint lawyer and the "common interest" doctrines are distinct." *Id*. at 237 (analyzing commonality of the plaintiffs' interests to determine the extent of the privilege after they no longer shared an attorney, and finding communications that occurred while they were sharing counsel were privileged under the joint lawyer doctrine); *see also Whitney v. Tallgrass Beef Co. LLC*, No. 13 C 7322, 2015 WL 3819373, at *5 n.2 (N.D. Ill. June 18, 2015) ("Many courts have warned litigants that these two exceptions to a privilege waiver are not identical," and "[t]he issues are easily conflated with one another.").

"[T]he threshold question when determining whether the joint client doctrine applies is whether the same attorney represented both parties in their common interest." *DePuy Orthopaedics, Inc. v. Hosp.*, No. 3:12-CV-299-JVB-MGG, 2016 WL 7030400, at *3 (N.D. Ind. Dec. 1, 2016); *see also Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 855 (D. Minn. 2012) ("[I]n order to implicate the joint representation privilege, two or more clients must consult an attorney on matters of common interest. . . This privilege only attaches if an attorney-client relationship is formed."); *625 Milwaukee, LLC v. Switch & Data Facilities Co., LLC*, No. 06-C-0727, 2008 WL 582564, at *3 (E.D. Wis. Feb. 29, 2008) ("Once begun, joint-client representation generally continues until the lawyer withdraws or is discharged by one of the clients, or until it becomes clear to all parties that the clients' legal interests have diverged too much to justify using common attorneys."); Restatement (Third) of the Law Governing Lawyers § 75 (2000)("[C]ommunications by co-clients with their common lawyer retain confidential characteristics as against third persons. The rule

4

recognizes that it may be desirable to have multiple clients represented by the same lawyer. . . . Whether a client-lawyer relationship exists between each client and the common lawyer is determined under § 14, specifically whether they have expressly or impliedly agreed to common representation in which confidential information will be shared.").

In this case, Plaintiffs jointly bring claims for race discrimination and retaliation against their employer for terminations that occurred on the same day, and have consistently pursued their claims from filing EEOC charges through today with the same counsel. It is true that "simply because two individuals choose to be represented by the same lawyer, the requisite commonality of interest required to make the doctrine applicable is not thereby assured," *McCullough*, 304 F.R.D. at 238; however, these plaintiffs do have the requisite commonality of interest for the joint lawyer doctrine to apply. The existence of both of the plaintiffs in communications with their attorney does not destroy the attorney-client privilege.

  C. <u>Marital Communications</u>

Defendant asserts that many of the communications in question did not occur simply between the two plaintiffs and their attorney, but also included the wife of Plaintiff Johnson. Johnson and his wife share a physical address and an email address. Plaintiffs argue that just as mail sent through a postal carrier to their joint home address is still considered privileged, email to an email inbox to which a spouse has access should also be privileged. However, at his deposition, Plaintiff Pierre testified that Johnson's wife was present in meetings and specifically copied on emails, and Defendant argues the attorney-client privilege does not protect communications made in her presence. Plaintiffs disagree, arguing that all discussions between the four parties are privileged because all communications between the clients and their attorney are privileged and

5

communications between one of the clients and his spouse are privileged.

The marital communications privilege "applies only to communications made in confidence between the spouses during a valid marriage." *United States v. Lofton*, 957 F.2d 476, 477 (7th Cir. 1992), and "exists to insure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984). Accordingly, any communications between Johnson and his wife, made in confidence and outside the presence of others, are privileged. It does not cover communications once there are any other parties involved.

The Court has determined that communication between Johnson, Pierre, and their counsel are subject to the attorney-client privilege pursuant to the joint lawyer doctrine, despite the communications involving three parties. In addition to the joint lawyer doctrine, "there is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services." *Jenkins*, 487 F.3d at 491. The exception is limited: "the [attorney-client] privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client," so "communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 961 (N.D. Ill. 2009) (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999)) (quotation marks omitted).

Plaintiffs argues that communications involving Johnson's wife are protected by the attorney-client privilege because Johnson's wife is an agent of her husband and of his attorney since

6

she files her taxes jointly with Johnson, they have a shared interest in legal representation because they live together and share finances, and because "the marital privilege meshes into the attorney-client privilege to create a unit of three persons where confidentiality remains unbroken." Despite reference to a "large line of cases," Plaintiffs cite no case law in support of this privilege-meshing approach, and the Court's review of the concept of privilege in this Circuit does not support such an expansive, ill-defined concept of "units" of privilege. Plaintiffs do not argue that Johnson's wife is a book-keeper, secretary, accountant, expert witness, interpreter, investigator, or the like. *See Jenkins*, 487 F.3d at 491; *Rao v. Bd. of Trustees of the Univ. of Ill.*, No. 14-CV-0066, 2016 WL 6124436, at *3 (N.D. Ill. Oct. 20, 2016). "[A]s is the case with any privilege, the one seeking its protection must carry the burden of showing that it applies," *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009) (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 822 (7th Cir.2007); *Rao*, 2016 WL 6124436, at *3 ("The Court does not believe that Plaintiff has carried his burden of proving that Ms. Jasti's role in this litigation is the type that preserves the privilege despite her third party status. . . . While the exception appears to be flexible, the Court has found no case law that would stretch the exception to reach Ms. Jasti's role in this case."). To the extent that Plaintiffs are arguing that anything shared with a party's spouse is privileged because of the marriage, they are reminded that the subject matter protected by the marital communications privilege "includes only what one spouse communicates to the other, not what one spouse learns about the other in other ways, such as by observing the other's actions." *United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013).

Being a co-signatory on tax return documents and having some financial stake in the outcome of the case does not make Johnson's wife an agent of Johnson or his attorney for the

7

purposes of the attorney-client relationship, and her role as Johnson's spouse does not entitle her communications with his co-plaintiff or his attorney to be privileged. Plaintiffs have not cited to any authority in this Circuit that would justify expanding either the marital communications privilege or the attorney-client privilege to encompass apparently any and all communications between two clients, their attorney, and the spouse of a client. The Seventh Circuit Court of Appeals has emphasized that its "general take on privileges" is to "construe [them] narrowly because they are in derogation of the search for truth," *Valero Energy Corp.*, 569 F.3d at 630, the opposite of what Plaintiffs are urging in this case.

To the extent that emails about the case were sent between counsel and Plaintiffs, even if the emails were sent to an email address to which a spouse may have had access, they are protected by the attorney-client privilege pursuant to the joint client doctrine, as described above. However, if any other another person besides Plaintiffs and their attorney was copied on the emails, included in the text messages, or participated in the conversation, the privilege has been waived as to that communication. Plaintiffs' argument suggests that all of the emails were merely sent to an email address that Johnson's wife had access to, but Defendant attaches deposition testimony suggesting that Johnson's wife also attended meetings between Plaintiffs and their attorney and was personally copied on emails. Accordingly, Plaintiffs must produce the non-privileged communications, and provide a privilege log for the requested documents or communications that they are still withholding on the basis of privilege.

In accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii), the privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected,

8

will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Plaintiffs must "provide to the opposing party a privilege log containing the following information for each document not disclosed: (1) the name and job title or capacity of the author(s)/originator(s); (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party; (3) a general description of the document by type (e.g., letter, memorandum, report); (4) the date of the document; and (5) a general description of the subject matter of the document." *In re Bridgestone/Firestone, Inc., ATX. ATX II*, 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001).

## II.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion to Compel Discovery [DE 27] as described above, and **ORDERS** Plaintiffs to provide the discovery responses and privilege log as described above, within a reasonable time, and to file a notice with the Court when it has been provided. If additional discovery is needed as a result of the information provided, Defendant shall file a motion to reopen discovery with a description of what is needed and proposed deadlines.

Because the motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Accordingly, the Court **ORDERS** Defendant to file, by **August 20, 2020**, an itemization of costs and fees, including attorney's fees, incurred in making the Motion, with Plaintiffs to respond by **September 3, 2020**, with Defendant to file a reply, if any, by **September 10, 2020**.

9

The Court **DENIES as moot** Defendant's Motion to Allow Resolution of Motion to Compel Before Establishing a Summary Judgment Deadline [DE 28].

SO ORDERED this 6th day of August, 2020.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:   All counsel of record